# Exhibit No. 3
## Declaration of Bryan Tilden

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:04-CV-580-H(2)

LUMBERMENS MUTUAL CASUALTY )
COMPANY, )
                           Plaintiff, )
                            )
       v. )
                            )
FIRST INSURANCE SERVICES, INC., )
                           Defendant. )

## DECLARATION OF R. BRYAN TILDEN

R. Bryan Tilden, being duly sworn, deposes and says:

1. I am more than 18 years of age, and all statements in this declaration are based on my personal knowledge, except as otherwise expressly stated.

2. As more fully set forth in my Curriculum Vitae, a copy of which is attached hereto as Exhibit A, I have been employed in the insurance industry for over 33 years. I practiced as a licensed independent insurance agent in North Carolina and Virginia for many years and for much of that time, my duties specifically included, but were not limited to, handling matters relating to homeowners insurance and Fire Protection Classes relating to such insurance. I also was employed for a number of years by the Independent Insurance Agents of North Carolina ["IIANC"] in positions which involved, among other things, conducting training courses for persons desiring to become licensed as insurance agents and continuing education courses for licensed insurance agents. The courses that I planned and taught included a number of courses

that related to the content of, and practices and procedures of insurance agents relating to, homeowners insurance. From 1997 through the present, I have owned and operated Tilden & Associates in which I provide training and consulting services to members of the insurance industry, including insurance agents and brokers.

3. In each of my above-described roles in the insurance industry, it has been part of my business to acquire and maintain familiarity with the customs and practices of reasonable, competent insurance agents in handling the procurement of insurance, specifically including but not limited to, homeowners insurance, for their customers. I am also familiar with the rules, meaning and procedures applicable to Fire Protection Classes for property to be insured under homeowners insurance. In addition to serving as an insurance agent in that capacity, I have taught training and continuing education courses for agents and brokers with respect to such matters, and I have regularly interacted with insurance agents and brokers and insurance carriers relating to such matters. All opinions expressed in this declaration and in the expert's report that I previously submitted in this action are based on and within the scope of my familiarity with such customs and practices and the applicable standard of care for independent insurance agents in North Carolina.

4. In addition to my work in the insurance industry, I have worked with the Volunteer Fire Department in Chatham County, North Carolina, for 16 years. In that capacity, I am familiar with fire fighting arrangements and capacity in Chatham County, specifically including, but not limited to the fire fighting equipment and procedures of Parkwood Fire Station which serves the geographic area of the Graham house at issue in this action.

5. In order to become familiar with the facts and circumstances at issue in this case, I have reviewed the materials identified in my expert report of June 29, 2005 and the additional materials identified in my deposition of February 22, 2008.

6. In my opinion, based on my training and experience, it was reasonable for Barry Curtis and First Insurance Services, Inc. [hereinafter "the Agency"] to rely on the owner's representation that the cost of construction for the house of $800,000 in determining the estimated replacement cost to be used in procuring insurance for the house. Such reliance by the Agency was consistent with the customary practices and procedures of competent insurance agents exercising reasonable care. The cost that it has actually taken to construct a just-completed house is the best evidence of what it would cost to replace the house, and is equivalent to, and better than, a replacement cost estimator. This is especially true with respect to high value homes, such as the Graham house, because replacement cost estimators are generally unreliable for such large houses. In addition, the cost of construction reported by Mr. Graham, as increased by Mr. Curtis to $850,000, yields a cost per square foot that is within the normal range of construction costs in the Durham/Chatham County area, thus reinforcing the reasonableness of relying on that cost.

7. In my opinion based on my experience and training, Cathy Bowling acted consistently with the customs and practices of competent insurance agents exercising reasonable care in determining that the Graham house was in Fire Protection Class Five. The rules governing Fire Protection Classes for property located in the Chatham County portion of Parkwood Fire District are attached hereto as Exhibit __. As Ms. Bowling correctly determined, those rules provide that houses in that portion of the Parkwood Fire District are in Fire Protection Class Five if they are within five miles of the Parkwood Fire Station and that the hydrant

Case 5:04-cv-00580-H    Document 51-4    Filed 08/25/08    Page 4 of 10

distance criteria applicable in many fire districts is not applicable. (Fire Protection Class is primarily dependent on the availability of a certain amount of water to fight fires, and in many fire districts that water supply is provided by hydrants. The Parkwood Fire Station, however, uses a tanker truck/drop tank/shuttle system that provides a sufficient water supply to houses within a five mile radius to eliminate the need for hydrants in order to achieve Fire Protection Class Five rating.) Ms. Bowling acted reasonably in accordance with the customs and practices of competent insurance agents in confirming with Fire Department Representatives that the Graham house was within five miles of the fire station and in concluding on the basis of that information that the Graham house was in Fire Protection Class Five.

8. It is also my opinion that Ms Bowling acted consistently with customs and practices of competent insurance agents in entering the hydrant distance of 1,000 feet on the Kemper website electronic "application" form in order to get the website to upload the application. For reasons set forth above, the hydrant distance was not a material fact or question for houses located within five miles of the fire station in the Chatham County portion of the Parkwood Fire District. As recognized by Kemper's own underwriters in their depositions, the relevance, if any, of hydrant distance in a homeowner's insurance application is for purpose of determining the Fire Protection Class. Under the Fire Protection Rules applicable in the Parkwood Fire District, however, hydrant distance is not material for that purpose. My understanding from the information provided, however, is that the Kemper website would not permit the electronic application to be uploaded without an entry in the hydrant distance blank and that the website would not accept an entry such as "not applicable." Due to this limitation, the entry of 1,000 feet in the electronic application was a reasonable proxy for the accurate

information that hydrant distance was not material to Fire Protection Class Five in Parkwood Fire District.

9. Finally, I believe that it was consistent with the customs and practices of competent insurance agents in North Carolina exercising reasonable care for Barry Curtis to recommend that Mr. Graham wait until Kemper's opinion as to the replacement cost of the house was established by Kemper's upcoming inspection in the light of the apparent discrepancy between the construction cost provided by Mr. Graham and the replacement cost in the appraisal done for loan approval purposes. Insurance agents in North Carolina are trained that real estate appraisals are for loan purposes and do not necessarily reflect the true construction cost of the building. As a consequence, it is entirely consistent with the custom and practice of insurance agents in North Carolina to await the inspection and replacement cost determination of the insurance company in such situations. Mr. Curtis' recommendation was especially reasonable because the insurance coverage had already gone into force, and it therefore was too late for the insurance carrier to turn down the application, even if it is assumed for purposes of discussion their increase in the replacement cost would have caused it to do so. Once the coverage was in force, the carrier could not legally terminate coverage without going through the procedures and providing substantial advance notice to the policyholder.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the ___5___ day of ___MARCH___, 2008.

                              _R. Bryan Tilden_    [SEAL]
                              R. Bryan Tilden

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing *Declaration of R. Bryan Tilden* was duly served this date on all parties by forwarding a copy thereof by e-mail and enclosed in a postage-paid envelope, deposited in the United States Mail, addressed as follows:

Mr. William W. Pollock
wwp@cshlaw.com
CRANFILL, SUMNER & HARTZOG, L.L.P.
Post Office Box 27808
Raleigh, North Carolina 27611-7808

Mr. Paul W. Burke
pburke@deflaw.com
DREW ECKL & FARNHAM, LLP
800 West Peachtree Street
Post Office Box 7600
Atlanta, Georgia 30357-0600

*Attorneys for Plaintiff, Lumbermens Mutual Casualty Company*

This the 6th day of March, 2008.

/s/ Michael T. Medford
Michael T. Medford
N.C. State Bar No. 7227
Katherine M. Bulfer
N.C. State Bar No. 35195
Of MANNING, FULTON & SKINNER, P.A.
Attorneys for Defendant First Insurance
 Services, Inc.
3605 Glenwood Avenue – Suite 500
Post Office Box 20389
Raleigh, North Carolina 27619-0389
Telephone: (919) 787-8880
Telefax:    (919) 787-8902

562964-MTM/00387-L32916

- 6 -

Case 5:04-cv-00580-H   Document 51-4   Filed 08/25/08   Page 7 of 10

1. PUBLIC PROTECTION CLASSIFICATIONS ARE DETERMINED BY USING ONE OF THE FOLLOWING METHODS:

    A. USING LOCATION(TM)

        (1) LOCATION(TM) IS A DATABASE THAT CAN BE USED TO DETERMINE PUBLIC PROTECTION CLASSIFICATIONS FOR SPECIFIC LOCATIONS.

        (2) IN THE EVENT THAT LOCATION(TM) PRODUCES A SPLIT CLASSIFICATION (E.G., IN A 6/9 COMMUNITY WHERE WATER SOURCE/HYDRANT INFORMATION IS NOT AVAILABLE) THE CLASSIFICATION NUMBER WILL BE DETERMINED AS FOLLOWS:

            (A) IF THE RISK ADDRESS IS WITHIN 1000 FEET OF AN APPROVED WATER SOURCE, THEN THE PPC TO BE ASSIGNED IS THE LOWER NUMBERED CLASS (E.G., CLASS 6 IN THE EXAMPLE ABOVE).

            (B) OTHERWISE THE RISK IS ASSIGNED A PPC 9.

    B. APPLYING THE FOLLOWING MANUAL RULES.

2. THESE PAGES LIST CLASSIFICATIONS AND SHOW:

    - NAME OF COMMUNITY OR CLASSIFIED AREA.
    - COUNTY IN WHICH LOCATED.
    - CLASSIFICATION NUMBER.
    - EXTENDED COVERAGE* ZONE.
    - TERRITORY CODE (CSP).

    NOTE: CODES APPLICABLE TO PORTIONS OF COUNTIES NOT SHOWN IN THE DETAILED LISTING WILL BE FOUND IN THE COUNTY TABULATION BELOW.

    *UNDER THE SIMPLIFIED COMMERCIAL PROPERTY COVERAGE PART, REFERENCE TO "EXTENDED COVERAGE" IS REPLACED BY "BASIC GROUP II".

3. CLASSIFICATION OF PUBLIC FIRE PROTECTION (PPC)
    A. FOR JURISDICTIONS LISTED WITH A SINGLE CLASSIFICATION NUMBER, ALL PROPERTIES WITHIN THE JURISDICTION SHOULD RECEIVE THE LISTED CLASSIFICATION NUMBER. IF THE SINGLE CLASS IS 8B, ALL PROPERTIES WITHIN SIX ROAD MILES OF THE FIRE STATION RECEIVE CLASS 8B.
    B. FOR JURISDICTIONS LISTED WITH MULTIPLE CLASSIFICATION NUMBERS (E.G. 6/9), SHOWN AS A "SPLIT CLASSIFICATION", THE CLASSIFICATION NUMBER APPLICABLE TO INDIVIDUAL PROPERTIES IS DETERMINED AS FOLLOWS:

...

(1) SPLIT CLASSIFICATIONS SHOWN AS "X/9" OR "X/9X" (E.G. 6/9X):

   (A) FOR PROPERTIES LOCATED FIVE ROAD MILES OR LESS FROM A RESPONDING FIRE STATION OF A DESIGNATED RECOGNIZED FIRE DEPARTMENT INDICATED BY THE LISTING FOR THE JURISDICTION, AND WITHIN 1,000 FEET OF A FIRE HYDRANT, THE FIRST LISTED CLASSIFICATION NUMBER APPLIES (E.G. 6/9, THE CLASS 6).

   (B) FOR PROPERTIES LOCATED FIVE ROAD MILES OR LESS FROM A RESPONDING FIRE STATION OF A DESIGNATED RECOGNIZED FIRE DEPARTMENT INDICATED IN THE LISTING FOR THE JURISDICTION, AND WITH A FIRE HYDRANT MORE THAN 1,000 FEET, CLASS 9 AS APPLIES.

   (C) FOR PROPERTIES NOT QUALIFYING FOR 5.B(1)(A) OR 5.B(1)(B), CLASS 10 APPLIES.

(2) SPLIT CLASSIFICATION SHOWN AS "9/9X" (E.G. 6/9X):

   (A) FOR PROPERTIES LOCATED FIVE ROAD MILES OR LESS FROM A RESPONDING FIRE STATION OF A DESIGNATED RECOGNIZED FIRE

https://www3.iso.com/isosuite/doc.asp?lob=CF&selstate=NC&product=CMC&publisher=1...   9/9/2004

FI0131

```
Effective Date.....................11/1/2002
Expiration Date....................1/31/2003
NTM Reference Number...............CMC-NC-2002-RU-002
Filing ID..........................
Final Disposition Circular.........NA
```